# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TRACY WILLIAMS, ) | |
| ) | |
|     *Plaintiff*, ) | |
| ) | |
|   vs. ) | Case No. 1:16-cv-209 |
| ) | |
| TARRY WILLIAMS, et al., ) | Magistrate Judge M. David Weisman |
| ) | |
|     *Defendants.* ) | |

## MEMORANDUM OPINION AND ORDER

Defendants Tarry Williams, Brett Carnahan, Charles Best, and Lakeisha Acklin move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt. 139.) For the reasons set forth herein, the Court grants Defendants' motion with respect to Counts I and III of Plaintiff's Second Amended Complaint, but denies the motion as to Count II.

## RELEVANT FACTS

Plaintiff Tracy Williams, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), brought the instant suit pursuant to 42 U.S.C. § 1983 against former Stateville Warden Tarry Williams, Correctional Officer Brett Carnahan, Lieutenant Charles Best, former Correctional Counselor Lakeisha Acklin, and Wexford Health Sources, Inc.[1] (Second Amended Complaint (Dkt. 49); Defendants' Statement of Facts ("Def. SOF"), Dkt. 141, at ¶¶ 1–5.) Plaintiff's claims stem from Defendant Carnahan's shakedown of Plaintiff's cell at Stateville Correctional Center ("Stateville") on September 26, 2014. (Def. SOF at ¶¶ 9–10.) During the shakedown, Defendant Carnahan discovered a piece of contraband and subsequently prepared an Officer Disciplinary Report indicating that he "'dug up a ½ inch of dirt from the tracks of the cell

---

[1] On September 27, 2018, Plaintiff filed a stipulation of dismissal as to Defendant Wexford Health Sources, Inc. (Dkt. 144.)

door and discovered a piece of metal 5 ¾ inches long in the track.'" (Plaintiff's Statement of Additional Facts ("P. SOAF"), Dkt. 148, at ¶ 1.) Plaintiff contends that the metal had been buried in front of his cell before his arrival around 2012. (Def. SOF at ¶ 14.) On September 30, 2014, Plaintiff testified in his defense at an Adjustment Committee Hearing but was not permitted to call any of his identified witnesses. (*Id.* at ¶ 25; P. SOAF at ¶ 2.) Defendant Best prohibited Plaintiff's proposed witnesses from testifying because of his determination that they "would be unable to provide relevant testimony." (Def. SOF at ¶ 22.) The parties do not dispute that Defendant Acklin had no involvement with investigating witnesses requested by inmates for Adjustment Committee Hearings. (*See* Dkt. 148 at p. 8.) Following the hearing, the Adjustment Committee sentenced Plaintiff to, among other punishment, one year of disciplinary segregation. (P. SOAF at ¶ 4.) Defendants Best and Acklin executed the Adjustment Committee's Final Summary Report dated September 30, 2014. (*Id.* at ¶ 5.)

Plaintiff subsequently appealed the disciplinary decision and the grievance officer recommended that Plaintiff's disciplinary report from the shakedown be expunged based on Defendant Carnahan's "vague" account of what transpired. (*Id.* at ¶ 9.) Defendant Williams' signature appears under the "Chief Administrative Officer's Response" disagreeing with the grievance officer's recommendation, although the parties dispute whether Defendant Williams was personally involved with the response. (*See* Dkt. 150 at ¶ 10.) Plaintiff then appealed the Chief Administrative Officer's recommendation that the disciplinary report be kept in place. (P. SOAF at ¶ 11.) The Administrative Review Board agreed with the grievance officer and ordered Defendant Williams to expunge Plaintiff's disciplinary sentence. (*Id.* at ¶ 12.) As a result, Plaintiff was released from segregation after approximately eight months (September 26, 2014 through June 6, 2015). (*Id.* at ¶ 13.) According to Plaintiff, he encountered deplorable conditions of

confinement during segregation, including cockroaches and other pests, broken windows in a filthy shower area, regurgitating sewers, and inadequate cleaning supplies. (Dkt. 141, Ex. 2, at pp. 22:18–23:12; 32:19–34:23.) Plaintiff further testified that he was given one small bottle a week containing cleaning solution that had lost its effectiveness and had "no cleaning power or disinfecting power to it." (*Id.* at pp. 29:17–30:23.) On several occasions, Plaintiff filed grievances regarding not receiving his standard cleaning supplies. (P. SOAF at ¶ 15.) Plaintiff was permitted to purchase personal hygiene products from Commissary and bought soap approximately once a month. (Def. SOF at ¶¶ 34–35.)

Upon release from segregation, Plaintiff made multiple requests that he be reinstated to his furniture job to no avail. (P. SOAF at ¶¶ 20–21.) Plaintiff then wrote to the Director of IDOC concerning his request and was transferred to Menard Correctional Center ("Menard") one week later. (Dkt. 150 at ¶¶ 22–23). On the same day as Plaintiff's transfer to Menard, Plaintiff's sister was transferred to Stateville to serve as a Correctional Officer and the Transfer Report recommended Plaintiff's relocation on this basis. (Dkt. 148 at p. 16.) Defendant Williams did not draft recommendations for inmate transfers; rather, he approved recommendations prepared by IDOC staff. (*Id.* at p. 17.)

## PROCEDURAL HISTORY

On April 11, 2017, the District Court dismissed Plaintiff's official capacity claims as well as his false imprisonment and deliberate indifference claims against Defendants Carnahan, Best, and Acklin. (Dkt. 83.) Plaintiff's Second Amended Complaint therefore contains the following pending causes of action: (1) Defendants denied him procedural due process with respect to a disciplinary ticket and Adjustment Committee Hearing in September of 2014 (Count I); Defendant Williams was deliberately indifferent to the conditions of Plaintiff's confinement (Count II); and

Defendant Williams transferred Plaintiff in retaliation for complaining about the loss of his job and back pay (Count III). (*See generally* Dkt. 49.) The parties consented to proceed before this Court on March 5, 2018. (Dkt. 125.)

## LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, the Court shall grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute as to a material fact exists if "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017). To show a genuine dispute as to a material fact, the non-moving party must offer "particular materials in the record," and cannot rely upon the pleadings or speculation. *Olendzki v. Rossi*, 765 F.3d 742, 746 (7th Cir. 2014). Courts must view all evidence in the light most favorable to the non-moving party and refrain from making credibility determinations or weighing evidence. *Rasho v. Elyea*, 856 F.3d 469, 477 (7th Cir. 2017); *see also Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) ("The party opposing summary judgment receives the benefit of reasonable inferences."). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). To defeat a motion for summary judgment, "'a party must present more than mere speculation or conjecture.'" *Borcky v. Maytag Corp.*, 248 F.3d 691, 697 (7th Cir. 2001).

## ANALYSIS

### I. Procedural Due Process

To establish a procedural due process claim, a plaintiff must show: (i) "he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon

that deprivation were constitutionally deficient." *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007). While "inmates have no liberty interest in avoiding transfer to discretionary segregation – that is, segregation imposed for administrative, protective, or investigative purposes," *Townsend*, 522 F.3d at 771, "disciplinary segregation can trigger due process protections depending on the duration and conditions of segregation." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009). Due process requires that prisoners in disciplinary proceedings be given: "(1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992); *see also Wolff v. McDonnell*, 418 U.S. 539, 563–72 (1974).

### a.) *Defendants Best and Acklin*

Plaintiff contends that Defendants Best and Acklin violated his due process rights by denying Plaintiff the opportunity to call any of his identified witnesses during the disciplinary hearing. (P. SOAF at ¶ 2.) Plaintiff further argues that Defendant Best falsely attested to receiving witness statements when he never actually contacted any of the potential witnesses. (Dkt. 148 at p. 8.) One such witness, according to Plaintiff, would have testified that he saw Defendant Carnahan plant the contraband piece of metal. (P. SOAF at ¶ 3.) Defendants object to Plaintiff's assertions as to what this witness would testify to as inadmissible hearsay. (Dkt. 150 at ¶ 3.) Defendants also assert that Defendant Best investigated Plaintiff's requested witnesses and determined that no witness had relevant information to provide based on their location during the shakedown. (Def. SOF at ¶ 22.) On September 30, 2014, Defendants Best and Acklin executed

the Adjustment Committee Final Summary Report which detailed Plaintiff's disciplinary sentence. (P. SOAF at ¶ 5.)

With respect to Defendant Best, the Court finds that his decision not to call Plaintiff's suggested witnesses did not violate Plaintiff's right to due process. The right to call witnesses is not "absolute," and due process does not demand that prison officials allow inmates to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Portee v. Knight*, 81 Fed. App'x 863, 865 (7th Cir. 2003). Plaintiff's only "evidence" as to the relevance of his proposed witnesses' testimony is Plaintiff's own testimony as to what one fellow inmate told Plaintiff about what the inmate witnessed. (P. SOAF at ¶ 3.) No exception to the hearsay rule operates to permit admission of the inmate's statement to Plaintiff. Consequently, Plaintiff's statement as to what his fellow inmate told Plaintiff is inadmissible hearsay and may not be considered in resolving Defendants' motion for summary judgment. *See Morrow v. Wal–Mart Stores, Inc.*, 152 F.3d 559, 563 (7th Cir.1998) ("'[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial.'"). As Plaintiff has presented no admissible evidence that any of his proposed witnesses would have supplied probative testimony to aid his defense, the Court grants summary judgment in favor of Defendant Best. *Compare Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003) (upholding denial of prisoner's claim that he was denied right to call witness at disciplinary hearing where inmate's affidavit did not specify what witness' testimony might have been or how it would have aided defense), *with Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir.2002) (remanding claim that inmate was denied right to call witnesses where inmate articulated in the district court a basis for concluding that witnesses'

testimony would have been relevant).² Having found that Defendant Best did not violate Plaintiff's due process rights, it follows that summary judgment as to Count I is proper for Defendant Acklin as well, given that her only involvement was signing off on the final report of Plaintiff's disciplinary hearing. (P. SOAF at ¶ 5.)

### b.) *Defendant Carnahan*

Plaintiff next argues that Defendant Carnahan violated Plaintiff's right to procedural due process by falsifying portions of his disciplinary report, specifically his attestation that he "'dug up a ½ inch of dirt from the tracks of the cell door and discovered a piece of metal 5 ¾ inches long in the track.'" (*Id.* at ¶ 1.) To support this contention, Plaintiff submitted his deposition testimony that the door track of Plaintiff's cell was metal and could not have been "dug" into. (*Id.* at ¶ 24.) Defendants do not dispute that there was a metal door track but challenge the negative inference Plaintiff seeks to draw from Defendant Carnahan's report. (Dkt. 150 at ¶ 24.)

It is well-established that "when an inmate has been accorded due process in the form of a disciplinary hearing, his allegation that a disciplinary or conduct report was falsified does not state a cognizable due process claim." *Moore v. Monahan*, No. 06 C 6088, 2008 WL 111299, at *10 (N.D. Ill. Jan. 10, 2008); *see also Lagerstrom v. Kingston*, 462 F.3d 621, 623 (7th Cir. 2006) (hearing's procedural safeguards were adequate protection against prison official's arbitrary actions); *McPherson v. McBride*, 188 F. 3d 784, 786 (7th Cir. 1999) ("[W]e have long held that as long as procedural protections are constitutionally adequate, we will not overturn a disciplinary decision solely because evidence indicates the claim was fraudulent."). Plaintiff does not dispute that he had a disciplinary hearing on September 30, 2014. (P. SOAF at ¶ 2.) And, as discussed

---

² Considering Plaintiff's failure to submit admissible evidence supporting what his proposed witnesses would have testified to, whether Defendant Best falsely attested to receiving witness statements is not material and does not preclude an entry of summary judgment in Defendants' favor.

7

above, the Court has determined that Defendants Best and Acklin did not violate Plaintiff's due process rights by not calling three potential witnesses. As the procedural safeguards identified by the Seventh Circuit have been satisfied, it follows that Plaintiff's due process claim against Defendant Carnahan cannot stand and must be dismissed with prejudice.

### *c.) Defendant Williams*

Plaintiff further contends that Defendant Williams violated Plaintiff's due process rights by keeping him in segregation after being notified about the alleged falsehoods in Defendant Carnahan's report and by tacitly approving of the Adjustment Committee's alleged practice of improperly refusing to call witnesses at inmates' hearings. (Def. SOF at ¶ 18.) As discussed above, Plaintiff has failed to submit sufficient evidence to support his claim against Defendants Best and Acklin regarding the decision not to call certain witnesses at Plaintiff's hearing. Plaintiff has also not presented any admissible evidence that a practice not to call witnesses existed or that Defendant Williams knew about any such practice. Most significantly, the Court has already found that Defendants Best and Acklin did not violate Plaintiff's procedural due process rights by not calling witnesses. And while the Court makes no finding as to the accuracy of Defendant Carnahan's report, the Court determined that the allegations of a false report cannot form a procedural due process claim. As previously explained, due process requires that constitutionally adequate procedures were afforded Plaintiff, which did occur. Without an underlying constitutional deprivation, Defendant Williams cannot be held liable for his reliance on the procedures employed during the disciplinary proceeding. Thus, even when viewed in a light most favorable to Plaintiff, the record does not contain sufficient evidence to permit a jury verdict for Plaintiff on his procedural due process claim against Defendant Williams.

## II. Conditions of Confinement

The Eight Amendment requires a "minimum standard for the treatment of inmates by prison officials: the prison conditions must not, among other things, involve the 'wanton and unnecessary infliction of pain.'" *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). The Court must undertake a two-part examination of a prisoner's constitutional challenge to prison conditions. First, the Court must determine whether the conditions were "'sufficiently serious' so that 'a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities.'" *Id.* The Seventh Circuit has made clear that some conditions of confinement "may establish an Eighth Amendment violation in combination when each alone would not do so." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). Additionally, if a prisoner endures an adverse condition of confinement over a "significant time," the condition "can become an Eighth Amendment violation even if it would not be impermissible if it were only a short-term problem." *Id.* If the prisoner establishes that the conditions were sufficiently serious, the Court then examines "whether the prison officials acted with 'deliberate indifference' to the conditions in question." *Id.* Deliberate indifference "means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Id.* In other words, "the inmate must show that the official received information from which the inference could be drawn that a substantial risk existed, and that the official actually drew the inference." *Id.*

Plaintiff provided deposition testimony about cockroaches and other pests, broken windows in a filthy shower area, regurgitating sewers, and inadequate cleaning supplies. (Dkt. 141, Ex. 2, at pp. 22:18–23:12; 32:19–34:23.) Plaintiff further testified that he was given one small bottle a week containing cleaning solution that had lost its effectiveness and had "no cleaning

power or disinfecting power to it." (*Id.* at pp. 29:17–30:23.) On numerous occasions, Plaintiff filed grievances regarding not receiving his standard cleaning supplies. (P. SOAF at ¶ 15.) Defendants contend that Plaintiff was permitted to purchase personal hygiene products, including soap, from Commissary and that Plaintiff indeed purchased soap approximately once a month. (Def. SOF at ¶¶ 34–35.)

Viewing the record in the light most favorable to Plaintiff, the Court concludes that Plaintiff has shown enough to establish a triable issue of fact as to whether the conditions Plaintiff experienced were unconstitutional. *See, e.g.*, *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (finding that plaintiff avoided summary judgment on his claim "that the myriad infestations and his lack of access to adequate cleaning supplies, taken together, deprived him of the basic human need of rudimentary sanitation in violation of the Eight Amendment"); *Lyons v. Vergara*, No. 14 CV 9564, 2016 WL 4493455, at *4–7 (N.D. Ill. Aug. 26, 2016) (totality of conditions—which included having sheets that were dirty and in poor condition, not having a bath towel, having a "filthy" cell, pest infestation, water that was yellow and tasted strange—were sufficiently serious so as to deny summary judgment). While some of the individual deprivations about which Plaintiff complains (for example, an abundance of flies and other insects) might not rise to the level of a constitutional violation, the totality of the conditions he describes are sufficiently grievous that a jury could find that he is entitled to relief under Section 1983.

Having found that Plaintiff has satisfied the first step of an Eighth Amendment analysis, the Court now turns to the question of whether Defendant Williams acted with deliberate indifference to the conditions in question. The record shows that Plaintiff filed eight grievances between October 30, 2014 and March 4, 2016 complaining about the conditions of his confinement and the lack of adequate cleaning supplies. (P. SOAF at ¶¶ 15–16.) The grievances were sent to

Defendant Williams' office and bear his signature. (Dkt. 141 at Ex. 14.) Defendants argue, however, that Defendant Williams has never spoken with Plaintiff and has no recollection of reviewing any correspondence from Plaintiff, including grievances. (Def. SOF at ¶¶ 44–45.) As was Defendant Williams' practice, any grievance bearing his signature was signed by Defendant Williams' designee.[3] (Def. SOF at ¶ 47.)

Evaluating the record in the light most favorable to Plaintiff, a material dispute exists over whether Defendant Williams knew about the conditions of Plaintiff's confinement. And whether Defendant Williams knew about the substantial risk of harm created by the unsanitary cell conditions informs whether he exhibited deliberate indifference. While Defendant Williams' signature on the grievance is far from conclusive evidence that Williams knew of the grievance, Williams' testimony that he was unaware of the grievances does not by itself require summary judgment in his favor. *See, e.g.*, *Brown*, 2017 WL 2362597, at *3 (finding that warden's deposition testimony regarding lack of knowledge of grievances "does not eliminate all disputes of fact regarding whether he knew about a grievance upon which his signature appeared"); *Townsend v. Fuchs*, 522 F.3d 765, 774 (7th Cir. 2008) ("Credibility determinations . . . lie exclusively within the fact-finder's domain and are not appropriate for a district court to make at the summary judgment stage.").

---

[3] Plaintiff challenges the constitutionality of Defendant Williams' practice of designee signatures. While the Court makes no finding on the constitutionality of the practice, it generally agrees with the Court in *Brown v. Carter*, No. 13 C 2775, 2017 WL 2362597, at *2 (N.D. Ill. May 31, 2017), which was reluctant "to endorse a system that immunizes prison supervisors from § 1983 liability who delegate grievance review to an individual who . . . was unidentified until the supervisor's deposition." *See also Goodman v. Carter*, No. 2000 C 948, 2001 WL 755137, at *5 (N.D. Ill. Jul. 2, 2001) (denying summary judgment where designee not identified and warden's name appears on grievance); *Zirko v. Ghosh*, No. 10 C 08135, 2015 WL 6447768, at *15 (N.D. Ill. Oct. 26, 2015) (citing *Goodman* for the conclusion that a warden may not use Illinois code provisions that permit delegation "to escape personal knowledge and liability, . . . 'without disclosing to whom [the task of reviewing grievances] was delegated.'").

Defendant Williams offers two distinct rationales in his attempt to establish that he cannot be personally liable for Plaintiff's conditions of confinement. First, Williams *implicitly* argues he was unaware of Plaintiff's grievances. (*See* Dkt. 148 AT ¶¶ 45–49.) Significantly, Williams never states that he did not review the grievances at issue here (any of the eight), and instead relies on a lack of memory and his general practice in dealing with grievances. Williams also offers no definitive statements from a designee (or other individual) that the grievances were reviewed by someone else, and the identity of that individual. The Court recognizes that it can consider testimony that is fairly described as "generalities" (*Pearson v. Ill. Bell Tel. Co.*, No. 15 C 653, 2016 WL 7374235, at *4 (N.D. Ill. Dec. 20, 2016)), and that Williams is "entitled to fill in some gaps by drawing reasonable inferences about what likely occurred." *Ani-Deng v. Jeffboat, LLC*, 777 F.3d 452, 454 (7th Cir. 2015). These same evidentiary principles, however, should not be used to support a litigation practice that essentially eviscerates the protections under § 1983 by allowing prison officials to delegate their authority to unidentified (and perhaps unknown) individuals, thus completely inhibiting Plaintiff's ability to demonstrate the subjective prong of the deliberate indifference inquiry. *See* Footnote No. 3. Here, Williams' claim of general lack of memory as to whether he reviewed Plaintiff's grievances, coupled with his reliance on a general habit of designating his grievance review authority (as opposed to particularly identified designations), as well as his failure to identify the supposed-designee, is insufficient to satisfy the movant's burden at the summary judgment stage.[4] There remains a question of fact for a jury to consider.

---

[4] The Court is sympathetic to the demands and responsibilities that individuals such as Defendant Williams must address daily and understanding that Defendant Williams may not review and contemplate each grievance that is directed to him. However, if, in the interest of administrative and institutional efficiencies, a prison warden delegates certain duties that may impact the constitutional rights of inmates, the Court believes a better practice would be to have a more detailed record of such delegations. Had Defendant Williams identified during discovery the individuals who resolved Plaintiff's grievances, Plaintiff would have had the opportunity to explore those individuals' potential

Second, Williams relies on a trio of cases that he asserts support the proposition that "Plaintiff's grievances are insufficient to establish Section 1983 liability." (Dkt. 149 at p. 6.) In *Thomas v. Knight*, 196 Fed. App'x 424, 429 (7th Cir. 2006), the Seventh Circuit, in an oddly postured appeal, held that "[a] warden . . . does not incur liability under §1983 *for a subordinate's conduct* just by participating in the grievance process." (Emphasis added.) Here, Plaintiff's theory of liability is that Defendant Williams bears personal responsibility because he was aware of the alleged conditions of confinement (through eight grievances) and failed to act. (Dkt. 147 at p. 11 ("[t]he primary inference from these facts . . . is that Defendant Williams must have known about the risk of harm resulting from these unsanitary conditions . . . and that he turned a blind eye to them").) Thus, *Thomas* does not provide Defendant Williams with support for his position. Defendant Williams also asks us to consider *Kelly v. Ghosh*, No. 11 C 1283, 2013 WL 773012 (N.D. Ill. Feb. 27, 2013), and *Stallings v. Hardy*, No. 11 C 8107, 2013 WL 5781805 (N.D. Ill. Oct. 25, 2013). As an initial matter, both *Kelly* and *Stallings* involve deliberate indifference claims premised on lack of medical care, and both courts concluded that the defendant-wardens were entitled to rely upon the medical personnel's treatment of the plaintiffs when assessing deliberate indifference considerations. *Kelly*, 2013 WL 773012 at *9; *Stallings*, 2013 WL 5781805 at *9. While Defendant Williams is correct that both courts also relied in part on the defendant-wardens' lack of personal knowledge in reaching their conclusions, the defendants stated definitively that they had not seen any of the documents that would have provided them with notice, and the designees who reviewed the plaintiffs' grievance were identified by initials next to the defendant-wardens' respective signatures on the grievance forms. Thus, there was none of the guess work as

---

liability under 42 U.S.C. § 1983, and more importantly, whether any of the relevant information had been conveyed to Defendant Williams.

13

to who may be responsible for the alleged conduct that this case presents. In short, the cited cases are factually distinguishable from the instant matter on several significant bases.

Accordingly, summary judgment is not appropriate on Plaintiff's conditions of confinement claim.

## III. Exhaustion of Remedies

Defendants contend that summary judgment is appropriate on Plaintiff's retaliation claim against Defendant Williams because Plaintiff failed to exhaust his administrative remedies. The Prison Litigation Reform Act "requires comprehensive administrative exhaustion." *Ortiz v. Forbes*, No. 11 C 4145, 2012 WL 5389708, at *1 (N.D. Ill. Oct. 30, 2012). Under the statute, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; *see also Walker v. Page*, 59 Fed. App'x 896, 899 (7th Cir. 2003) ("inmates need to exhaust only *available* administrative remedies") (emphasis in original). The Seventh Circuit has acknowledged that transfer to a different correctional institution *may* render the grievance process unavailable. *See, e.g.*, *Flournoy v. Schomig*, 152 Fed. App'x 535, 537 (7th Cir. 2005) (acknowledging that "movement out of an institution may render grievance procedures unavailable if the change in custody status effectively terminates the administrative process"). The Seventh Circuit has not, however, "held as a matter of law that a transfer from [one facility] to another facility, prior to completion of the grievance process, renders such remedies unavailable." *Ortiz*, 2012 WL 5389708, at *1.

Here, it is undisputed that Plaintiff did not file a grievance with the Administrative Review Board concerning his transfer to Menard in July of 2015 in accordance with administrative procedures. (Def. SOF at ¶ 51.) Thus, the question that remains is whether, because of his transfer

14

to Menard, Plaintiff had any available administrative remedies to exhaust. Plaintiff testified that Defendant Williams ordered his transfer to Menard without prior notice to Plaintiff, and therefore Plaintiff had no opportunity to file a grievance against Defendant Williams before relocating. (P. SOAF at ¶ 23.) Defendants have offered no evidence that the grievance policy at Stateville remains available for detainees transferred to different facilities. As such, a question of fact remains regarding Plaintiff's ability to avail himself of administrative remedies. The Court therefore denies Defendants' motion for summary judgment as to exhaustion of remedies.

## IV. Retaliation

Plaintiff testified that Defendant Williams transferred him to Menard in retaliation for Plaintiff's repeated requests to be reinstated to his furniture job following his release from segregation. (P. SOAF at ¶¶ 19–22.) To prove a First Amendment claim for retaliation, Plaintiff must establish that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in [the defendant's] decision to take the retaliatory action." *Verser v. Smith*, No. 14 C 11 87, 2017 WL 528381, at *8 (N.D. Ill. Feb. 9, 2017) (quoting *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012)).

Here, the parties agree on the following: Plaintiff wrote to the Director of IDOC concerning his furniture job after making multiple requests to be reinstated and was transferred to Menard one week later (Dkt. 150 at ¶¶ 22–23); Defendant Williams did not draft recommendations for inmate transfers; rather, he approved recommendations prepared by IDOC staff (Dkt. 148 at p. 17); Plaintiff's sister was transferred to Stateville on July 1, 2015 (the same day as Plaintiff's transfer) to serve as a Correctional Officer (Dkt. 148 at p. 16); and the Transfer Report (prepared by IDOC officials and presented to Defendant Williams for his approval)

15

recommended Plaintiff's transfer due to his sister beginning work at Stateville as a Correctional Officer (*id.*). A dispute exists, however, regarding whether Defendant Williams' "personally received or reviewed any requests from Plaintiff to be reinstated to his job" and whether Defendant Williams ordered – as opposed to approved – Plaintiff's transfer. (Dkt. 150 at ¶¶ 21, 23.) The parties also disagree as to whether Stateville's "unwritten purported policy" about not staffing employees at the same facility as close relatives was required under Administrative Directive 03.02.108 which prohibits IDOC employees from having conflicts of interest. (Dkt. 148 at p. 16.)

There is no dispute that Plaintiff satisfied the first prong of his retaliation claim. As for whether Plaintiff suffered a deprivation that would likely deter First Amendment activity, Plaintiff contends that being transferred to another facility after filing a complaint would deter First Amendment activity in the future. While Defendants counter that Plaintiff was merely moved from one maximum security facility to another, the Court presumes, for purposes of this analysis, that reasonable minds could differ about whether such a transfer constitutes a sufficient deprivation. As such, the Court presumes that the second element has been satisfied.

Plaintiff is unable, however, to establish the remaining element of his retaliation claim – that Plaintiff's request for reinstatement "was at least a motivating factor" in Defendant Williams' approval of Plaintiff's transfer to Menard. Defendants submitted evidence that, as a matter of policy, Stateville employees were not staffed at the same facility as close relative offenders. (Dkt. 148 at p. 16.) Although Plaintiff questions the "unwritten purported policy" at Stateville, Plaintiff has failed to offer admissible evidence in response that would directly challenge Defendants' assertion. (*Id.*) Pursuant to Rule 56(c)(1)(A), "[a] party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information,

affidavits or declaration, stipulations . . . admissions, interrogatory answers, or other materials." Plaintiff's response that he "disputes" the requirements of Stateville's unwritten policy, without citing to any admissible evidence in support, is not enough to create an issue of material fact. Even if the Court were to look beyond the scope of Defendants' statement regarding the unwritten policy (and Plaintiff's inadequate response), Plaintiff has not presented enough circumstantial evidence of a retaliatory motive to withstand summary judgment on his retaliation claim. While Plaintiff stresses that he was transferred to Menard one week after writing to the Director of IDOC concerning his furniture job, (Dkt. 150 at ¶¶ 22–23), "'suspicious timing alone rarely is sufficient to create a triable issue.'" *Mirocha v. Palos Cmty. Hosp.*, 240 F. Supp. 3d 822, 846 (N.D. Ill. 2017). And although a dispute exists regarding whether Defendant Williams' "personally received or reviewed any requests from Plaintiff to be reinstated to his job" and whether Defendant Williams ordered – as opposed to approved – Plaintiff's transfer, the Court does not consider these facts to be material. (Dkt. 150 at ¶¶ 21, 23.) Defendants offered evidence that Stateville's conflict of interest policy necessitated Plaintiff's transfer and Plaintiff was unable to effectively dispute this fact. The Court therefore grants Defendants' motion for summary judgment as to Count III.

## Conclusion

For the reasons set forth above, the Court grants Defendants' motion for summary judgment [139] with respect to Counts I and III of Plaintiff's Second Amended Complaint, but denies the motion as to Count II.

**SO ORDERED.**  **ENTERED: January 18, 2019**

*M. David Weisman*

**M. David Weisman**
**United States Magistrate Judge**